UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JAY ALLEN CHICKADAUNCE by his mother and next friend Dianna Williams; on his own behalf and on behalf of a class of those similarly situated,<br>CHRIS REISING by his mother and next friend Mary Reising; on his own behalf and on behalf of a class of those similarly situated,<br>KRISTA BROWN by her mother and next friend Monica Smith; on her own behalf and on behalf of a class of those similarly situated,<br>JACOB KNIGHT,<br><br>                Plaintiffs,<br><br>     vs.<br><br>DEBRA MINOTT in her official capacity as Secretary of the Indiana Family and Social Services Administration,<br>NICOLE NORVELL in her official capacity as Director of the Division of Disability and Rehabilitative Services of the Indiana Family and Social Services Admin.,<br><br>                Defendants. | No. 1:13-cv-01223-WTL-MJD |

**ORDER ON PLAINTIFFS' MOTION TO COMPEL DISCOVERY**

This matter comes before the Court on Plaintiff's Motion to Compel Discovery. [Dkt. 69.] For the following reasons, the Court **GRANTS** Plaintiffs' motion.

**I.    Background**

On August 1, 2013, several disabled individuals ("Plaintiffs") filed suit against officials of the Indiana Family and Social Services Administration ("State" or "Defendants"), alleging that the way Defendants administered the Indiana Community Integration and Habilitation

1

Medicaid Waiver Program ("CIH Waiver Program") did not ensure Plaintiffs received benefits to which they were entitled under federal Medicaid Law. [Dkt. 1 at 1-2.] Plaintiffs further alleged violations of the "integration mandate" of the Americans with Disabilities Act of 1990 and the Rehabilitation Act of 1973. [Dkt.1 at 2; Dkt. 71 at 2.] They specifically targeted the State's "objective-based allocation" system, which imposes caps on the amount of services available to persons in the CIH program. [Dkt. 26 at 6-9.]

Plaintiffs moved for class certification, [Dkts. 3, 22 & 26], and on October 29, 2013, Plaintiffs and Defendants stipulated to certification of a class defined as "[a]ny and all persons enrolled in Indiana's [CIH Waiver Program] since August 1, 2011, or who will be enrolled in that program, who have been assigned or who will be assigned an ALGO level of four (4) or higher." [Dkt. 29 at 1-2.] The Court approved the stipulation, [Dkt. 30], and the class contains approximately 4,800 members. [Dkt. 79 at 1.]

Class counsel originally requested from Defendants the electronic case files of 146 past and current class members. [Dkts. 69-4, 69-5.] Plaintiffs twice amended their request. [Dkts. 69-6, 69-7.] They now seek approximately 200 case files of specific individuals and an unknown number of case files from the St. Vincent New Hope group home facility, which provides services to class members. [Dkt. 79 at 1.] The New Hope facility is the subject of the testimony of State expert witness Dr. Daniel Shull. [Dkt. 71 at 5.]

The requested files relate to 1) persons who appear on Plaintiffs' witness list; 2) persons class counsel has identified as suffering as a result of the State's allocation of funding; 3) persons terminated from the CIH Waiver Program; and 4) persons who received services at New Hope. [Dkt. 71 at 3-4.] The State opposed the request for these files. [Dkt. 69-5.] The parties could not

resolve the dispute, and this Motion to Compel Discovery followed on September 22, 2014. [Dkt. 69.]

## II. Legal Standard

The Court has broad discretion over discovery. *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002). "Although there is a strong public policy in favor of disclosure of relevant materials," the Court may impose limits if the discovery sought would be "unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive." *Id.* (quoting Fed. R. Civ. P. 26(b)). "Before restricting discovery, the court should consider the totality of the circumstances, weighing the value of the material sought against the burden of providing it, and taking into account society's interest in furthering the truthseeking function in the particular case before the court." *Id.* (internal quotations and citations omitted).

When ruling on a motion to compel, specific factors to consider include "timeliness, good cause, utility, and materiality." *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 993 (7th Cir. 2002); *see also Wiginton v. CB Richard Ellis, Inc.*, 229 F.R.D. 568, 571 (N.D. Ill. 2004) (listing relevant factors as "the needs of the case, the amount in controversy, the resources of the parties, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues"). The Court, in short, conducts a "balancing test weighing the value of the material sought against the burden of providing it." *Belbachir v. United States*, No. 08 C 50193, 2010 WL 4718358, at *1 (N.D. Ill. Nov. 15, 2010).

## III. Discussion

The parties present several arguments, each of which addresses either the value of the case files at issue or the burden of producing the files.

### A. Value of the Case Files

#### 1. Proving Plaintiffs' Class-Wide Claims

Plaintiffs note that they have the burden of demonstrating that the State's policies deprive class members of necessary services and fail to ensure that class members are fully integrated into the community. [Dkt. 71 at 5.] They therefore argue that the data on patients' "conditions, needs, and services" contained in the case files of absent class members are highly relevant to their allegations. [*Id.*] Defendants do not dispute Plaintiffs' burden, [*see* Dkt. 78], but argue that Plaintiffs can show the necessary injury to class members through the experience of the named class representatives. [Dkt. 78 at 2.] They note that the parties have stipulated to a class, such that the named plaintiffs, by definition, will present claims typical of the absent class members. [*Id.* (citing Fed. R. Civ. P. 23(b)).]

That the Court has certified a class does not preclude presentation of evidence about absent class members. *See, e.g.*, *Velasco v. Sogro, Inc.*, No., 08-C-0244, 2014 WL 3737971, at *5 (E.D. Wis. July 30, 2014). The State itself, [Dkt. 78 at 5], cites case law in which the Seventh Circuit recognized that discovery from absent class members may be appropriate if "necessary or helpful to the proper presentation and correct adjudication" of the principal suit. *Brennan v. Midwestern United Life Ins. Co.*, 450 F.2d 999, 1005 (7th Cir. 1971). That discovery from absent class members is permissible implies that presentation of evidence about those class members is also appropriate. *See* Fed. R. Civ. P. 26 (defining discoverable material as that "reasonably calculated to lead to the discovery of admissible evidence").Thus, Plaintiffs in this case are justified in presenting evidence about absent class members, notwithstanding the stipulation to class certification.

The Court also finds that the files in question are relevant to Plaintiffs' claims. First, the Court agrees with Plaintiffs that the requested case files are likely to include "highly pertinent information concerning members of the class." [Dkt. at 6.] Class counsel submitted an affidavit describing that he had significant experience litigating cases involving Medicaid waiver programs and thus was familiar with the information contained in case files. [Dkt. 69-3.] This information includes diagnoses, historical levels of treatment, reasons for reductions in service levels, and incident reports, [Dkt. 69-3], all of which will be relevant to Plaintiffs' integration mandate claims under the ADA and Rehabilitation Act. [Dkt. 79 at 3.] Plaintiffs, after all, cannot prevail simply by showing a reduction in the quantitative level of services for class members [Dkt. 79 at 7]; instead, they must show that class members' community-based treatment is "appropriate" and that "placement in the community can be reasonably accommodated." *Radaszewski ex rel. Radaszewski v. Maram*, 383 F.3d 599, 608 (7th Cir. 2004). This requires an investigation of the "practical effect of the State's policies on [class members'] health, safety, and community involvement," [Dkt. 79 at 7-8], making the qualitative information in the case files important to Plaintiffs' claims.

Second, the State has agreed to maintain the level of services named plaintiffs receive during the pendency of this lawsuit. [Dkt. 71 at 7; Dkt. 69-3 at 3.] Because of this agreement, named plaintiffs have not yet suffered the injury allegedly caused by the State's policies; instead, the *absent* class members have suffered the potential harm of reduced services. [Dkt. 71 at 7.] Thus, although the State argues that Plaintiffs should rely on the named representatives' injuries, [Dkt. 78 at 2], this tactic would be ineffective. The named plaintiffs' claims may indeed be "typical" of the class as a whole insofar as named and absent members both face reduced service levels in the future, but it is the *absent* class members who have already suffered the reduction of

5

the service, and thus it is the *absent* class members' case files that will more clearly show the effects of that reduction. These files are therefore highly relevant to Plaintiffs' claim.

The authority Defendants cite is not to the contrary. Defendants rely on *Daugherty v. Murphy*, in which this Court criticized a discovery request focusing on "individualized relief rather than a class-wide determination that injunctive relief is necessary to address a systemic problem" at the Indiana Family and Social Services Administration. No. 1:06-CV-0878- SEB-DML, 2010 WL 4877720, at *8 (S.D. Ind. Nov. 23, 2010). The plaintiffs in that case alleged the State regularly and prematurely terminated Medicaid benefits during appeals of adverse decisions. *Id.* at *1. The discovery request the court criticized sought information that would have shown whether some class members had suffered multiple early terminations. *Id.* at *8. Thus, it focused on the magnitude of the injury that individual plaintiffs had suffered, rather than whether the State's policies violated federal law. The Court therefore determined the request related more to individual relief than the necessity of a class-wide injunction. *Id.* at *8.

The case files sought in this case are critically different: As noted above, Plaintiffs must show that community based treatment for class members is appropriate and can be reasonably accommodated. *Radaszewski*, 383 F.3d at 608 (7th Cir. 2004). Information such as treatment history, diagnoses, and incident reports will shed light on whether class members can be placed in the community, and the case files containing this information will therefore help establish whether the State's policies violate the integration mandate at all. Whereas in *Daugherty*, the criticized discovery request related to the individual magnitude of each class members' harm, the discovery request in this case relates to whether the State's administration of its policies is actually a violation. Plaintiffs, that is, seek each case file not to determine the amount of harm done by any single violation of the integration mandate, but to assess whether the State's system-

wide administration of its policies even results in such violations. Thus, Plaintiffs' request is not the sort of individualized discovery that *Daugherty* would support denying.

Finally, the reduction in services absent class members have already experienced is relevant to Plaintiffs' particular requests for injunctive and declaratory relief. [Dkt. 1 at 21.] Generally, past exposure to illegal conduct does not suffice for injunctive relief, *see, e.g., Perry v. Sheahan*, 222 F.3d 309, 314 (7th Cir. 2000), but here, Plaintiffs challenge the State's administration of its objective-based allocation system as codified in Title 460, Chapter 13 of the Indiana Administrative Code. [Dkt. 1 at 5; *see* 460 Ind. Admin. Code 13-3-15.] Because they challenge an established and actively administered policy, any harm associated with past reductions in service will likely be accompanied by the sort of "continuing, present adverse effects," 222 F.3d 309 at 314, that can support a claim for prospective relief. Hence, the case files documenting the adverse impact on absent class members are relevant to Plaintiffs' requested remedy.

### 2. Relationship to Expert Witness Testimony

Plaintiffs next argue that the case files of class members at the New Hope facility are relevant to their claims because State expert witness Dr. Shull will testify about the effects of the State's policies on New Hope residents. [Dkt. 79 at 3.] Defendants respond that Dr. Shull will not include testimony about individual New Hope patients, and they therefore see no reason to produce the case files of New Hope residents. [*Id.*]

Plaintiffs' argument is more persuasive. Even if Dr. Shull plans to testify mainly on the overall effect of the State policies on his facility, [*see* Dkt. 79 at 3], the case files of individual residents remain pertinent. These files, as noted above, contain the diagnoses, treatment histories and levels of services for class members, and thus could refute the testimony of Dr. Shull. If, for

7

instance, Dr. Shull testifies as expected—and declares the State's objective-based allocation of funding appears to be "quite functional" [Dkt. 71 at 8]—information from case files documenting patient complaints or other problems could rebut his testimony. Thus, the case files Plaintiffs seek are relevant to Dr. Shull's testimony and their claim as a whole.

### 3. Probative Value Compared to Other Evidence

Defendants contend that Plaintiffs have numerous ways to obtain information from individual class members without examining their case files, such as by serving interrogatories asking when and why the State terminated members' participation in the CIH Waiver Program. [Dkt. 78 at 7.] Plaintiffs in their reply brief argue that Defendants' proposed alternative methods are ineffective. [Dkt. at 11.]

Under Rule 26, parties generally have wide latitude in conducting discovery, and may use any method of discovery in any sequence, so long as "the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26. Plaintiffs in this case provided numerous reasons why interrogatories would be insufficient to support their claims: the answers to the proposed interrogatories would *not* contain the "lengthy summaries of a client's history and need for services" typically included in the patient's case file; they would *not* include "incident reports" bearing on the medical and social needs of the patient; and they would *not* include "case notes" from the individual's case manager describing how the State's allocation policies affected the individual's level of services. [Dkt. 79 at 11-12.] As set out in class counsel's affidavit, [Dkt. 69-3] the case files likely *would* contain such information, and thus would be more probative of Plaintiffs' claims than the proposed interrogatories.

Plaintiffs also point out that the case files will strengthen their presentation of other forms of evidence. Plaintiffs' witness list currently includes several class members who will testify

8

about cuts in their services. [Dkt. 71 at 8.] As Plaintiffs recognize, [*id.* at 9], the case files will assist Plaintiffs' counsel in verifying the witnesses' testimony, and information from the State's own case files will naturally be more credible than potentially self-serving testimony from class members. *See, e.g.*, *Foster v. United States*, 735 F.3d 561, 565 (7th Cir. 2013) (approving district court's decision to discredit self-serving testimony). Based on these considerations, the Court finds that the probative value of the case files weighs strongly in favor of granting the motion to compel.

### B. Burden of Producing Information

In addition to the value of the case files, the Court must consider the burden the non-movant would bear in producing the files. *Patterson*, 281 F.3d at 681. The non-movant has the burden to show that the requested material would be unduly burdensome to produce. *Graham v. Casey's Gen. Stores*, 206 F.R.D. 251, 254 (S.D. Ind. 2002). Defendants in this case raise concerns about the burden that producing the files would place on 1) the State and 2) on the absent class members.

#### 1. Burden on the State

Defendants identify a three-fold burden on the State. They claim that preparing the database of case files for class counsel's access will require fifteen to twenty hours; that a State employee would need to monitor class counsel's investigation of the case files to protect the privacy of medical records; and that class counsel would need to undergo HIPAA training before being allowed to access the database. [Dkt. 78 at 8-9.] Plaintiffs contend that this burden is minor, especially given the relatively small number of files Plaintiffs seek. [Dkt. 71 at 8-9.]

As noted above, the Court must consider the "totality of the circumstances" of this motion to compel. *Patterson*, 281 F.3d at 681. It must therefore consider both the magnitude and

nature of the burden, and should "give more weight to interests that have a distinctively social value than to purely private interests." *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 706 F.2d 1488, 1493 (7th Cir. 1983).

The magnitude of the burden in this case is slight. First, Plaintiffs seek the case files for only a small fraction of the class: they request the files of 200 identified members and an unknown number of files from the New Hope facility. [Dkt. 79 at 1.] Even if numerous class members receive services at New Hope, this constitutes a small minority of the 4,800 members of the class, [Dkt. 79 at 1], and requires less extensive discovery than courts have approved in the past. *See, e.g.*, *Montez v. Hickenlooper*, No. 92-cv-00870-CMA, 2014 WL 4413221, at *3 (D. Colo. Sept. 8, 2014) (compelling production of records for ten percent of plaintiff class); *Long v. Trans World Airlines, Inc.*, No. 86 C 7521, 1991 WL 134184, at *1 (N.D. Ill. July 12, 1991) (compelling production of computerized records for twelve percent of plaintiff class).

Second, the State's expenditures of fifteen to twenty hours to prepare the database and additional time to "monitor" class counsel's access are insignificant compared to burdens that courts have previously approved. In one employment discrimination case, for instance, the court ordered a production of documents that required 160 man-hours at a cost of $16,000. *U.S. Equal Employment Opportunity Comm'n v. Dolgencorp*, No. LLC, 13-CV-04307, 2014 WL 3734361, at *2 (N.D. Ill. July 29, 2014). The court in that case deemed the cost justified "in light of the importance" of the information. *Id.* As described above, the Court in this case has likewise determined that the requested information is important to Plaintiffs' claims, and the costs that Defendants have identified are therefore justifiable.

Similarly, in *Donnelly v. NCO Financial Systems*, the court considered a motion to compel the production of records of over 100 million telephone calls. 263 F.R.D. 500, 503 (N.D.

Ill. 2009), *objections overruled*, No. 09 C 2264, 2010 WL 308975 (N.D. Ill. Jan. 13, 2010). Defendants argued that producing the records would require "several hundred hours" and the creation of special programs to extract the relevant information. *Id.* The Court nonetheless granted the motion to compel. *Id.* at 504. Defendants' burden in this case is comparatively minor: they need not create any special programs, and need only expend, by their own estimation, fifteen to twenty hours of effort. Thus, Defendants have not shown that Plaintiffs' request is unduly burdensome.

The nature of this case also supports granting the motion to compel. Plaintiffs' claims under the Americans with Disabilities Act and Rehabilitation Act implicate broad social interests. *See* 29 U.S.C. § 701 ("The purposes of [the Rehabilitation Act are to] empower individuals with disabilities to maximize employment, economic self-sufficiency, independence, and inclusion and integration into society."); 42 U.S.C. § 12101 ("It is the purpose of the [Americans with Disabilities Act] to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and to protect disabled Americans' "right to fully participate in all aspects of society."). In accordance with *Marrese*, the Court gives these social interests great weight, and is therefore inclined to grant Plaintiffs' motion to compel.

The Court also notes that Defendants in this case are state officials with considerable government resources available to them, and that the case involves potentially thousands of dollars in annual healthcare costs for each of several thousand class members. [*See* Dkt. 79 at 1; Dkt. 1-1 at 7.] The Court therefore finds the State's alleged burden relatively minor compared to the "amount in controversy" and the "resources of the parties." *Wiginton*, 229 F.R.D. at 571.

Finally, the State's suggestion that additional training or monitoring would be required to protect the privacy interests of the individuals whose case files will be produced is a red herring. First, the production in question is pursuant to this Court's order. Second, and more importantly, the production can and should be made pursuant to the Stipulated Protective Order Governing Confidential Health Information, which was negotiated by the parties and issued by this Court [Dkt. 49]. That Order provides more than adequate protection for the information to be produced. Defendants' suggestion that additional and more burdensome security will be required in order to comply with Plaintiffs' requests is groundless.

### 2. Burden on Unnamed Class Members

Defendants also contend that allowing access to the individual case files would prove unduly burdensome for the absent class members. They argue that if Plaintiffs access the case files, then Defendants will have to respond by serving their own discovery on the absent members to rebut Plaintiffs' evidence. [Dkt. 78 at 4.] Defendants suggest any trial will devolve into combing through the class members to find individuals who prove or disprove Plaintiffs' case. [*Id.*]

As support for their position, Defendants rely on *Brennan v. Midwestern United Life Ins. Co.*, in which the Seventh Circuit stated "absent class members should not be required to submit to discovery as a matter of course." 450 F.2d 999, 1005 (7th Cir. 1971). Courts should instead allow such discovery only when "necessary or helpful to the proper presentation and correct adjudication of the principal suit." *Id.*

Defendants' reliance on *Brennan* is misplaced for two reasons. First, Plaintiffs in this Motion to Compel do not seek discovery from any absent class members. Instead, they seek

access to information that Defendants themselves possess.[1] [Dkt. 69 at 3.] Second, even if Plaintiffs did seek such discovery, the Court has already addressed how the information in the case files is highly relevant to the Plaintiffs' case. It might therefore qualify as the sort of "necessary or helpful" information, 450 F.2d at 1005, that would justify discovery of absent class members.

Moreover, Defendants do not object to Plaintiffs' listing of absent class members as witnesses.[2] [Dkt. 79 at 10; *see also* Dkt. 78.] To the extent that these members are now non-party witnesses, they are subject to the usual discovery methods available with regard to non-parties. *See, e.g.*, *Bogosian v. Gulf Oil Corp.*, 71-1137, 1983 WL 1938, at *1 (E.D. Pa. Dec. 16, 1983) (allowing depositions of "unnamed plaintiff-class members who are properly and in good faith identified as trial witnesses"); *see also* A. Conte and H. Newberg, *Newberg on Class Actions* § 16:3 (4th ed. 2014). Hence, even if Defendants decide they must conduct discovery on these witnesses, they may do so without violating *Brennan's* general rule that absent class members are not subject to discovery. Defendants, that is, would be serving discovery not on *absent class members*, but on *non-party witnesses*. Their contemplated discovery would therefore pose no special burden on the absent class members *qua* class members, and it does not provide a basis for rejecting Plaintiffs' Motion to Compel.

**C. Balancing**

The Court's final decision must rest on the totality of the circumstances and a balancing of the value of the information sought, the burden of producing it, and the relevant societal

---

[1] Defendants' argument is based partly on the presumption that they will need to serve their own discovery on absent class members after Plaintiffs review the case files. [Dkt. 78 at 4.] If such discovery does prove necessary and does produce a dispute, the Court will address it at that time, and not in ruling on the current motion.
[2] This is appropriate, as nothing precludes unnamed members of the class from testifying. *See Young v. Cnty. of Cook*, No. 06 C 552, 2009 WL 2231782, at *1 (N.D. Ill. July 27, 2009).

13

interests. *Patterson*, 281 F.3d at 681. As described above, the information Plaintiffs seek is both highly relevant to their claims and more probative than other forms of evidence. The burden of producing that information is slight, both in comparison to the social value of resolving Plaintiffs' claims and the extent of discovery courts have previously allowed in class actions. The Court therefore **GRANTS** Plaintiffs' Motion.

## IV. Conclusion

For the reasons stated above, the Court **GRANTS** Plaintiffs' Motion to Compel Discovery. [Dkt. 69.] Defendants shall produce the requested information within fourteen days of the date of this order.

Date: 10/06/2014

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Gavin Minor Rose
ACLU OF INDIANA
grose@aclu-in.org

Harmony A. Mappes
FAEGRE BAKER DANIELS LLP - Indianapolis
harmony.mappes@faegrebd.com

Ryan Michael Hurley
FAEGRE BAKER DANIELS LLP - Indianapolis
ryan.hurley@FaegreBD.com